■ EDWARD GOLONKA, Appellant, v SARATOGA TEEN AND RECREATION OF SARATOGA SPRINGS, INC., Defendant and Third-Party Plaintiff-Respondent. HUGH O'BRIEN YOUTH FOUNDATION, NEW YORK, INC., et al., Third-Party Defendants; SARATOGA WINTER CLUB, INC., Third-Party Defendant-Respondent. [672 NYS2d 472] —Yesawich Jr., J. Appeal from an order of the Supreme Court (Donohue, J.), entered March 11, 1997 in Albany County, which granted motions by defendant and certain third-party defendants for summary judgment dismissing the complaint and third-party complaint.

As plaintiff was leaving a Micro Brewery Festival held at the New Scotland Avenue Armory in the City of Albany, he slipped on ice in the parking lot and fell, injuring his ankle and prompting this lawsuit. Defendant, one of three charitable sponsors of the beer tasting event—which, the record reveals, had been planned and organized primarily by third-party defendant Max Oswald, a regional sales manager for third-party defendant Buffalo Brewing Company, and several local tavern owners—provided volunteers to assist in running the festival and in return received a share of the net receipts. The remaining third-party defendants, Saratoga Winter Club, Inc. and Hugh O'Brien Youth Foundation, New York, Inc., were the other charitable sponsors.

After issue was joined and depositions conducted, defendant moved for summary judgment dismissing plaintiff's complaint, and Oswald, Buffalo Brewing and Saratoga Winter Club cross-moved for dismissal of the third-party action against them. All of the motions were granted and this appeal by plaintiff ensued.

We affirm. The record evidence provides no basis for concluding that defendant possessed or controlled the armory premises

during the festival, such that it would have had a duty to maintain the parking lot in a reasonably safe condition (*see generally, Zadarosni v F. & W. Restauranteurs of Southeast,* 192 AD2d 1051, 1052; *Turrisi v Ponderosa, Inc.,* 179 AD2d 956, 957-958). Rather, it is apparent that Oswald, along with his associates in the hospitality business, conceived of, planned, orchestrated and supervised the event. It was they who located and arranged for use of the site; contacted the brewers, exhibitors and seminar speakers; designed and furnished the tickets and promotional materials; procured a temporary liquor license; established the criteria for participation by the sponsoring charities; and determined which tasks would be performed by the volunteers. The charities' representatives made no critical decisions either prior to or during the festival (*cf., Johnson v Cherry Grove Is. Mgt.,* 175 AD2d 827, 828; *McGrath v United Hosp.,* 167 AD2d 518, 519).

Under these circumstances, as Supreme Court aptly noted, defendant's denomination as lessee of the premises is not dispositive, for the lease in question was executed by Oswald, who had no affiliation with defendant, without the latter's knowledge or consent (*see, Harriss v Tams,* 258 NY 229, 235; *cf., Weston Assocs. v Niagara Props.,* 130 AD2d 964). Nor is the mere fact that defendant participated in the event, by undertaking those duties specified by Oswald as prerequisite to receiving funds generated by the affair (namely, furnishing volunteer labor and obtaining insurance coverage for the occasion by means of a rider to its existing policy), enough to constitute ratification of the lease, given the lack of proof that defendant was ever made aware that it had been named as lessee.

Moreover, even assuming, arguendo, that defendant owed a duty to plaintiff, plaintiff cannot recover absent a showing that defendant either created the claimed dangerous condition, or had actual or constructive notice thereof, and an opportunity to remedy the defect (*see, Simmons v Metropolitan Life Ins. Co.,* 84 NY2d 972, 973-974; *Santora v Golub Corp.,* 245 AD2d 693, 694; *McClarren v Price Chopper Supermarkets,* 226 AD2d 982, 983, *lv denied* 88 NY2d 811). Plaintiff's allegation that defendant's personnel created the ice patch on which he allegedly slipped, by dumping ice or liquid outside the building, finds no support in the record; indeed, the only proof that anyone engaged in these activities is plaintiff's averment that he had been told, after the accident, by an unidentified declarant that other unidentified individuals had been observed disposing of ice in that manner. Significantly, there is no basis for concluding that anyone affiliated with defendant was actu-

ally notified that dumping was occurring or that ice had formed as a result.

As for constructive notice, plaintiff himself testified that he slipped on a patch of "black ice", a term he admitted was used to characterize ice that is "difficult to see or recognize as ice"; he further stated that the area in which he fell "didn't look like ice at all", but "like pavement". There being no other indication that the asserted hazard was "visible and apparent" at any time, let alone for a sufficient period to allow defendant to discover and rectify the problem, plaintiff's claims cannot be sustained (see, Hamilton v Rite Aid Pharmacies, 234 AD2d 778; Byrd v Church of Christ Uniting, 192 AD2d 967, 969).

Mikoll, J. P., Mercure, Crew III and Peters, JJ., concur. Ordered that the order is affirmed, with one bill of costs.